UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      -v-                       1:23-CR-387-5 (DNH)
                                          1:25-CV-999 (DNH)

JOSHUA ATKINSON,

                Petitioner-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                      OF COUNSEL:

UNITED STATES ATTORNEY      ASHLYN MIRANDA, ESQ.
Northern District of New York      Ass't United States Attorney
445 Broadway
Albany, NY 12207

JOSHUA ATKINSON
Petitioner-Defendant, Pro Se
81620-510
Beckley FCI
Inmate Mail/Parcels
P.O. Box 350
Beaver, WV 25813

DAVID N. HURD
United States District Judge

## DECISION & ORDER

## I. INTRODUCTION

    Petitioner-defendant Joshua Atkinson ("petitioner"), acting *pro se*, has

moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence

based on alleged ineffective assistance of his trial counsel.  Dkt. No. 220.  The United States of America (the "Government") has opposed.  Dkt. No. 264.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>

Between March 2021 and January 2023, petitioner and his co-defendants ran a cocaine and fentanyl trafficking operation in Ulster County, New York. Petitioner often fronted drugs to his co-defendants, who would pay him back later.  Like most drug traffickers, petitioner used threats and violence to keep the operation running smoothly.  And like most drug conspiracies, the group eventually came to the attention of law enforcement.  After an investigation that included controlled buys using some confidential sources, federal agents executed a search warrant at petitioner's house that recovered a pistol.

On September 28, 2023, a federal grand jury in the Northern District of New York indicted petitioner with a conspiracy to distribute the cocaine and fentanyl and with distributing those drugs, too.  *See, e.g.*, Dkt. No. 21.  After his arrest, petitioner retained counsel and entered into plea negotiations with the Government.  Thereafter, petitioner pleaded guilty, pursuant to a written plea agreement, to conspiracy to distribute the cocaine and fentanyl (Count 1) and with distribution of those drugs (Count 6).  Dkt. No. 138.  As part of this

plea agreement, petitioner agreed that he was accountable for approximately 3.2 kilograms of cocaine and 600 grams of fentanyl. *See id.* ¶ 6(a).

On January 27, 2025, petitioner was sentenced to a below-Guidelines term of 156 months' imprisonment on Counts 1 and 6, to be served concurrently, to be followed by a five-year term of supervised release. Dkt. No. 173.

## III.  <u>LEGAL STANDARD</u>

Congress enacted § 2255 in 1948 because federal courts in certain judicial districts were getting swamped by habeas corpus petitions. *United States v. Hayman*, 342 U.S. 205, 213–14 (1952). Section 2255 was passed as a habeas-type remedy that returned jurisdiction over challenges to the validity of a federal conviction to the sentencing court. *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

Under § 2255, "a prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." But § 2255 is not a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). A legal or factual error that might warrant relief on direct review is typically insufficient under § 2255. *Addonizio*, 442 U.S. at 184.

Instead, § 2255 strikes a balance between the value of error-correction and the respect for finality in criminal sentences. *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995). Thus, relief is available "only for a constitutional error, a

lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Procedurally, a court presented with a 28 U.S.C. § 2255 motion must follow the Rules Governing § 2255 Proceedings for the United States District Courts. Under those Rules, a trial court can decide meritless claims on the basis of the papers, with or without a response from the Government. Rule 4(b); Rule 7(a). If a claim requires factual development, the court can order discovery or expand the paper record. Rule 6; Rule 7. Thereafter, the court is expected to hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). As the Second Circuit has explained:

> The procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding. The petitioner's motion sets forth his or her legal and factual claims, accompanied by relevant exhibits: e.g., an affidavit from the petitioner or others asserting relevant facts within their personal knowledge and/or identifying other sources of relevant evidence. The district court reviews those materials and relevant portions of the record in the underlying criminal proceeding. The court then determines whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petition, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief. If

> material facts are in dispute, a hearing should usually
> be held, and relevant findings of fact made.

*Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (cleaned up).

Ultimately, however, the defendant bears the burden of proving his claim by a preponderance of the evidence. *Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). Thus, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987). Nor is a reviewing court required to credit factual assertions that are "contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214.

## IV. **DISCUSSION**

Petitioner contends that he is entitled to 28 U.S.C. § 2255 relief because his trial counsel, Attorney Kevin C. Harp, (1) "coerced him into accepting a plea agreement," and, at sentencing, failed to (2) present mitigating evidence of his family circumstances, (3) challenge certain sentencing enhancements, and/or (4) seek a downward departure based on petitioner's "youthfulness" in light of "the 829 Amendment." Dkt. No. 220.[1]

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of an attorney. *See, e.g.*, *Gonzalez v. United States*, 722

---

[1] The Court reordered these arguments for the sake of analytical clarity.

F.3d 118, 130 (2d Cir. 2013).  To prove constitutionally *ineffective* assistance, a petitioner must show: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Under the first prong of *Strickland*, the reviewing court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  To overcome this presumption, the petitioner must show "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Under the second prong of *Strickland*, the petitioner must "affirmatively prove prejudice" by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 693–94.  A reasonable probability in this context is a "probability sufficient to undermine confidence in the outcome."  *Id* at 694.

## 1. Plea Agreement & Coercion

First, petitioner argues that Attorney Harp "coerced him into accepting a plea agreement."  Dkt. No. 220 at 3.  Petitioner contends that Attorney Harp advised him "that it was his only option" and failed to provide petitioner with "a meaningful analysis of the plea's consequences or alternatives."  According

to petitioner, if he had received competent legal advice "he would have either proceeded to trial or negotiated a more favorable plea agreement." *Id*.

This argument is meritless. As a threshold matter, petitioner waived his right to appeal or collaterally attack his conviction and any sentence of 188 months or less as part of his plea agreement. Dkt. No. 138 ¶ 7(d). As noted *supra*, petitioner was sentenced to less than that: 156 months. Dkt. No. 173.

Although "[t]here is a presumption against the waiver of fundamental rights," *United States v. Chua*, 349 F. Supp. 3d 214, 218 (E.D.N.Y. 2018), the Second Circuit has held that "[a] defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable," *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016).

Exceptions to this rule include circumstances "such as (1) when the waiver was not made knowingly, voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the [ ] sentence." *Sanford*, 841 F.3d at 580 (cleaned up).

Liberally construed in light of *pro se* status, petitioner's argument is best understood as a claim that his waiver was not made knowingly, voluntarily, and competently. As discussed below, this claim is flatly contradicted by the available record. Even so, out of an abundance of caution, and because the

written waiver provision carved out petitioner's "right to raise a claim based on alleged ineffective assistance of counsel," the Court will bypass the waiver issue and assess the merits.[2]

Petitioner contends that Attorney Harp "coerced him" into accepting the plea agreement by "advising him that it was his only option" and "failing to provide meaningful analysis of the plea's consequences or alternatives." Dkt. No. 220 at 3.

The Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "To provide constitutionally adequate representation during plea negotiations, a lawyer must generally advise the client of any offer that the government extends, outline the strengths and weaknesses of the case against him, and provide an estimate of the defendant's sentencing exposure at trial." *Siraj v. United States*, 999 F. Supp. 2d 367, 370 (E.D.N.Y. 2013) (cleaned up).

Importantly, though, "[t]he ultimate decision whether to plead guilty must be made by the defendant." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)). "[A] lawyer must take care not to coerce a client into either accepting

---

[2] As this Court and others have observed, the words "ineffective assistance" too often serve "as the ticket of admission to section 2255 proceedings." *Porrazzo v. United States*, 757 F. Supp. 3d 241, 251 (N.D.N.Y. 2024) (citation omitted) (explaining that a petitioner seeking "to assert substantive challenges to the validity of the prosecution against him—something almost always better off done through a direct appeal—will often frame his complaints as attorney-deficiency grievances to render them cognizable in the § 2255 context").

or rejecting a plea offer." *Id*. To try to account for this balancing act, courts recognize that there is a "wide range" of reasonableness in this context. *Id*.

Measured against this general legal standard, petitioner has not plausibly alleged an ineffective assistance claim on this basis. First, petitioner's claim is wholly conclusory. There is absolutely no indication in this record that the Government might have offered a "more favorable plea agreement" than the one he received.

Nor is there anything in the record, or in petitioner's papers, tending to suggest that he would have rejected the agreement he received and gone to trial instead. *See, e.g.*, *Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.").

Second, and relatedly, the record of the change-of-plea hearing repudiates petitioner's conclusory assertions. There, the Court advised petitioner that he was giving up his right to a trial and confirmed that petitioner understood the purpose of the proceeding:

> THE COURT: If you plead guilty, you are going to give up those rights [that were just explained] because of course there won't be a trial, but I will still have the same power to sentence you as if you had been found guilty on Counts 1 and 6 of the indictment after a trial.
>
> Is it your desire to give up the rights that I have just explained to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that if you plead guilty, you will be found guilty without a trial?

THE DEFENDANT: Yes, sir.

Dkt. No. 265 at 3. Next, the Court confirmed that petitioner had discussed

the case with Attorney Harp before the proceedings began:

THE COURT: I expect you have fully discussed this case with your attorney, that you have been advised of the nature of the charges against you, your rights, the factual basis of your plea, and the consequences of pleading guilty and any defense that you may have before you came in today.

And, finally, I warn you in the strongest terms possible that you should never ever plead guilty unless you are guilty. Do you understand?

THE DEFENDANT: Yes, your honor.

Dkt. No. 265 at 5. After the Clerk placed petitioner under oath and the Court

confirmed that he was competent to enter a plea, the Court asked petitioner a

series of questions to confirm that he was satisfied with Attorney Harp:

THE COURT: You are represented by Attorney Kevin Harp?

THE DEFENDANT: Yes.

THE COURT: Was he appointed by the Court or hired by you?

THE DEFENDANT: He was hired by me and my family.

THE COURT: Are you satisfied with him?

THE DEFENDANT: Absolutely.

THE COURT: And did he advise you of your rights?

THE DEFENDANT: Everything, sir.

THE COURT: And did you hear and understand what I told you a few moments ago about your rights?

THE DEFENDANT: Yes.

THE COURT: And you have read the indictment which contains the charges in Counts 1 and 6?

THE DEFENDANT: Yes, sir.

THE COURT: And did you attorney explain that - - those charges to you?

THE DEFENDANT: Yes, he did.

THE COURT: Did he answer any questions you may have had about those charges?

THE DEFENDANT: Every question.

THE COURT: And did you fully understand the nature of those two charges?

THE DEFENDANT: Everything, sir.

Dkt. No. 265 at 7–8. Afterward, the Court confirmed with petitioner that he had carefully reviewed the plea agreement with Attorney Harp:

THE COURT: Mr. Atkinson, I understand you have entered into a plea agreement with the United States Government?

THE DEFENDANT: Yes, I did.

THE COURT: Did you read the plea agreement?

THE DEFENDANT: I've read it, yes.

THE COURT: And did you review it with your attorney?

THE DEFENDANT: Yes. Multiple times.

THE COURT: And did he answer any and all questions you may have had with respect to the plea agreement?

THE DEFENDANT: Yeah. Every question, sir.

Dkt. No. 265 at 9–10. "Sworn testimony given during a plea colloquy carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." *United States v. Rivernider*, 828 F.3d 91, (2d Cir. 2016) (cleaned up).

Petitioner's statements—which were all made under oath—are more than enough to defeat his conclusory assertions that he was "coerced" into taking a plea, that Attorney Harp failed to explain the plea agreement to him, that he entered into the plea agreement without a complete and accurate view of the consequences, and/or that his guilty plea was not knowingly, voluntarily, and competently made. Accordingly, petitioner is not entitled to § 2255 relief.

## 2.  Sentencing Issues

This conclusion about the change-of-plea hearing gives rise to a related one: petitioner's waiver should be enforced as to his § 2255 claims that are unrelated to the plea bargaining and change-of-plea process.  As the Second Circuit has explained in the context of a direct appeal:

> [W]e reject the notion that an appeal waiver becomes unenforceable simply because a defendant 'claims' . . . ineffective assistance of counsel.  The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance was meritorious.  But if the record on appeal shows that the claim lacks merit, the appeal should be dismissed because the waiver should be enforced . . . .  If the rule were otherwise, a defendant who secured the benefits of a plea agreement by, *inter alia*, knowingly and voluntarily waiving the right to appeal could escape the fairly bargained-for appeal waiver by the simple expedient of asserting an ineffective-assistance-of-counsel claim that had no merit.

*United States v. Monzon*, 359 F.3d 110, 118–19 (2d Cir. 2004).  The same set of concerns has led our circuit to apply valid written waivers to bar habeas claims asserted on collateral review.  *See, e.g. Sanford*, 841 F.3d at 581.

Even on the merits, petitioner's remaining arguments do not provide any plausible basis for § 2255 relief.  Petitioner argues that, at the sentencing in this case, Attorney Harp: (a) failed to inform the Court that petitioner "is the father and primary caregiver of a child with autism," (b) failed to "challenge the applicability" of certain Sentencing Guidelines enhancements petitioner

received for "violent conduct," and (c) failed to seek a downward departure based on petitioner's "youthfulness."  Dkt. No. 220 at 3.

As with his plea-related complaints, petitioner's sentencing arguments are flatly contradicted by the available record and, to the extent there might be any room for doubt, petitioner cannot show any *Strickland* prejudice.

First, as the Government points out, the Pre-Sentence Investigation Report ("PSR") contained information about petitioner's age, the nature of his son's medical condition, and the importance of petitioner's role as a father and a caregiver.  Attorney Harp also raised these issues in his sentencing memorandum.  Dkt. No. 167 at 2 (age), 3 (son), 3–4, 6 (requesting sentence below Guidelines range).

Simply put, there is nothing ineffective about—let alone *constitutionally* ineffective—the approach that Attorney Harp took in advance of sentencing with respect to the issues of petitioner's relative youthfulness and his family circumstances.  That is especially so where, as here, Attorney Harp obtained a favorable result: although the Guidelines range was 188 to 235 months, the Court ultimately varied downward, imposing a sentence of only 156 months.

Second, as the Government points out, the sentencing enhancements for "violent conduct" about which petitioner now complains were included in the written plea agreement as sentencing stipulations.  Dkt. No. 138 ¶ 6.  Courts routinely reject ineffective-assistance claims premised on a failure to object to

sentencing enhancements where, as here, the enhancements were bargained for as part of a plea agreement.[3]  *See, e.g.*, *Chardon v. United States*, 2022 WL 2967296, at *3 (S.D.N.Y. July 26, 2022)*; Ceccarelli v. United States*, 2021 WL 5567355, *3 (W.D.N.Y. Nov. 29, 2021).  Accordingly, petitioner is not entitled to § 2255 relief.

## IV. <u>CONCLUSION</u>

Petitioner has failed to establish a plausible claim of ineffective assistance of counsel.  There is no need for further proceedings or an expansion of this record.

Therefore, it is

ORDERED that

1.  Petitioner-Defendant's § 2255 motion (Dkt. No. 220) is DENIED and DISMISSED; and

2.  No Certificate of Appealability[4] will be issued.

The Clerk of the Court is directed to terminate the pending motion and close the associated civil case.

---

[3]  As the Government also points out, petitioner cannot show *Strickland* prejudice because, even if Attorney Harp had objected and the Court had decided not to accept or apply the enhancements, the Guidelines range would still be 151 to 188 months.  Petitioner received a sentence within that range (156 months).

[4]  "A court may issue a certificate of appealability 'only if the applicant has made a substantial showing of the denial of a constitutional right.'"  *Gray v. United States*, 980 F.3d 264, 265 (2d Cir. 2020).  "That standard is met when 'reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner.'"  *Welch v. United States*, 578 U.S. 120, 127 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

IT IS SO ORDERED.


Dated:  January 13, 2026
        Utica, New York.

David N. Hurd
U.S. District Judge